WATERS B. PARRET, administrator of Catherine Craig,

*v.*

JAMES CRAIG, executor of John Young.

[Filed September 20th, 1897.]

1. In an action by the administrator of C. against the executor of Y., to recover money of C. deposited by Y., during a period of nine years, in a savings institution, it appeared that Y., who was C.'s nephew, for several years managed her business; that she made two wills, in which she gave him substantially all her property; that a few days before her death she made a third will in favor of another nephew; that Y. contested the last will, and that on such contest he, as a witness, explicitly admitted that he had appropriated to his own use the money so deposited, except as to two items, and justified his acts by declaring that the money had been given to him before it was deposited.— *Held*, that complainant, who relied on Y.'s evidence in the will contest to prove the appropriation, was not bound to accept his evidence as to gift, where it appeared that the deposit account was with him as "trustee for C.," while he had another account of his own in the same institution; that on receiving $200 of the money deposited, he gave C. a paper, reciting, "Rec'd of C., to deposit in savings bank, $200;" and that on the same day that he drew from the account $1,000, he gave C. a mortgage for the same amount, which was afterwards canceled.

2. A mortgage given by a nephew to his aunt, which was unaccompanied by any bond, but which itself contained a covenant to pay the money in five years, was afterwards delivered by her to him with intent to make him a gift of it, and of the money which it secured. Before delivering it, she made in his presence an endorsement thereon that she had received "principal and interest to date," and directing the register to "cancel this of record."—*Held*, that the gift of the money secured was effectual.

*Mr. Craig A. Marsh*, for the complainant.

*Mr. Charles H. Hartshorne*, for the defendant.

STEVENS, V. C.

This suit is brought by the administrator of Catherine Craig against the executor of John Young, under the following circumstances: Catherine Craig died in 1893, at the age of eighty-

one.  She had been a widow for about twelve years before her death, and had no children of her own.  John Young, her nephew, died in the year 1895.  He is shown by the evidence to have been her confidential adviser for nine or ten years prior to her decease, and to have had to a considerable extent the management of her business affairs.  On December 15th, 1883, he opened an account in the Provident Institution for Savings, of Jersey City, entitled "Provident Institution for Savings in account with John A. Young, trustee for Catherine Craig." Between this day and April 29th, 1892, he made twenty-nine deposits, aggregating, without interest, $3,222.76.  During this same period he drew out on various occasions nearly all the money thus deposited, with the interest.

The bill charges a misappropriation of these moneys by Young to his own use, and prays an account and a decree for payment. It is admitted that with the exception of two items, one of $76.73 to take up a protested check, and one of $100 given to Morgan Turton, the moneys were used by Young for his own purposes. The defendant's insistment is that Young had a right to use them because they were given to him by Mrs. Craig.  The proof of the alleged gift rests on Young's declarations alone.  Mrs. Craig had made two wills, one in 1885 and the other in 1890.  The first of these wills gave her entire estate, and the second her entire estate except her wardrobe, to Young.  Three or four days before her death she made a third will in favor of another nephew, Morgan Turton, and his wife, with whom she was then living.  The validity of the third will was contested by Young in the orphans court of Union county.  He was called as a witness and cross-examined in reference to the account in the savings bank.  He explicitly admitted that he had, with the exceptions I have mentioned, appropriated the money to his own use; he justified the appropriation by declaring that the money had been given to him.  The contention of defendant's counsel was that as complainant relied upon Young's evidence for proof of misappropriation, he was bound to accept *all* of it as true and that on the whole evidence it appeared that Young had taken

the money only because it was given to him. While I think that the defendant was entitled to have the whole of Young's evidence read, I do not think that the court is bound to give equal credit to every part of it. There cannot be the slightest doubt that Young used the money for his own purposes. He tells us how he used it. But there is on Young's own statement, and on the undisputed and undoubted facts, a very serious question as to whether Mrs. Craig made him a gift of it. It will be borne in mind that the bank account stood in the name of Young as trustee for Catherine Craig. Now, Young's statement was, not that Mrs. Craig had authorized him *after* he had deposited the money to draw it and spend it upon himself or upon his property, but that she had given it to him *before* he deposited it. He testified as follows :

"*Q.* Although you entered your account in that bank in her name, you still say that the money was given to you out and out and that you did not hold it as trustee, do you?

"*A.* Yes, I considered that money was a gift to me.

"*Q.* Did you deposit anything in this account except the presents of money from Mrs. Craig?

"*A.* Money and checks, that is all.

"*Q.* Well, they were all presents from her?

"*A.* Yes, sir."

It is certainly strange that if Young regarded this money as his own, he should have opened the account as a trustee account and continued it so for nine years. It is strange, too, that he should have opened it in this way, when he had in the same bank, as he admits, another account of his own. It is still stranger that he should, as he says he did, have opened it in this form after consultation with counsel. The fourth entry in the bank pass-book is an item of $200, under date of April 8th, 1884. On April 6th, 1884, there appears in a little diary belonging to Mrs. Craig the following receipt, which Young admits he gave her : "Apr. 6, 1884. Rec'd of Mrs. Adam Craig, to deposit in savings bank, $200. John A. Young." The $200 credited in the pass-book, Young admits to be the same as that which he receipted for. The language of this receipt is not the language

of gift.   Again, when *first* examined about the form of the
account, Young explained it by saying that he was Mrs. Craig's
banker.   On re-examination on a subsequent day, he was asked,

"*Q.* What did you mean when you said you were her banker?

"*A.* Well, I meant that she gave me money and I had a separate account
of it in the bank, knowing how much she wanted to give me.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"*Q.* Why did you want to know how much she gave you?

"*A.* Merely as a record, that is all.

"*Q.* What did you want of a record?

"*A.* Well, I can't tell exactly why I wanted a record—curiosity."

There is another still more significant fact.   On April 9th,
1887, he drew out of this account $1,000.   On the same day
he executed to his aunt a mortgage for that amount.   The mort-
gage was recorded, and subsequently, on a certificate of his aunt
authorizing its cancellation, canceled.   This action on his part
seems to me to be utterly irreconcilable with Young's statement
that the money in the bank was his own, or that he then so
regarded it.   I have no doubt, on the whole evidence, that the
account itself correctly states his position.   As to this fund, he
was trustee for Catherine Craig, and not absolute owner.   *In
foro conscientiæ,* he no doubt sought to justify his conduct in
taking it on the ground that his aunt's income was ample for
her support, and that he was her sole legatee.

On the part of the defendant, Maggie Cheever was called as a
witness to prove the gift.   But her testimony, taken altogether,
strongly indicates that Mrs. Craig's intention was not to make a
gift of this money *inter vivos,* but to give it to Young by her
will.   According to this witness, Mrs. Craig, within a year
before she died, appears to have thought that the money (except
that which had been secured by mortgage) was in the bank.
Nearly all of it had, in fact, been drawn out.

The remaining question relates to the $1,000 secured by mort-
gage.   This money, as I have said, was drawn out on April 9th,
1887.   The mortgage given to secure it was dated on that day,
and was acknowledged on the 14th and recorded on the 15th of
the same month.   On it is endorsed the following:  "Dunellen,

Sept. 29, 1888. Received of John A. Young principal and interest to date. Catherine Craig. Register will please cancel this of record    Catherine Craig." It is not denied that the signatures to this receipt and request are Mrs. Craig's. *Prima facie*, they indicate payment of the amount secured. But it was admitted by Young in his evidence before the orphans court that he never paid anything on this mortgage; his statement being that his aunt's intention in signing the endorsements was to cancel the debt. The evidence shows, I think, that Mrs. Young intended to make a present of this mortgage to her nephew. She told Maggie Cheever that she had given him $1,000 on a mortgage, and that she had canceled it. She told James Craig the same thing. She appears to have had the strongest affection for him, and she does not appear to have needed the money herself. She had, moreover, given all her money to him by her will. John, on the other hand, may have been at that time partially disabled by the loss of a finger, and, not working steadily at his trade of machinist, may have found it hard to pay back what he had borrowed. Nothing was more likely, then, than that Mrs. Craig should have been willing and perhaps, as Young says, anxious to cancel the debt. That she intended to do it is beyond all question. Her endorsements are proof of that. The matter then comes down to this, Did she do it effectually? I think she did. On this branch of the case John's testimony is supported by the written documents and by the evidence of witnesses. He said, "that $1,000 I took out; I gave my aunt a mortgage for that,    *    *    *    which was canceled by my aunt a year afterwards." He is then (in the will case) called upon to procure the mortgage, and does so. He did not say, in so many words, that after signing the direction to cancel she redelivered it to him, but he said that he was present when she signed the direction to cancel, and it is a matter of fair inference that he received it from her at that time. He procured it to be canceled of record three years before her death. In *Smith* v. *Burnet, 8 Stew. Eq. 323*, Mr. Justice Reed, after stating that declarations of the deceased with respect to the alleged gift would, standing alone, be of little or no force, says that where there is other evidence of a trans-

ference of the chattel from the possession of the alleged donor to the donee, the evidence of donor's declarations becomes relevant and important in fixing the meaning of the act transferring the possession. The declarations of Mrs. Craig, to which I have above referred as having been made to James Craig and Maggie Cheever, tend to prove that her object in thus canceling the mortgage was to make John Young a present of it and of the money which it secured. The cancellation itself, coupled with her acknowledgment of the receipt of the money, is evidence in the same direction furnished by Mrs. Craig herself. There was no separate bond given, but the mortgage itself contained an express covenant to pay the money in five years, so that the debt thus created was made a specialty debt; and the mortgage thus given constituted the only instrument on which a recovery could be had. This instrument was given up. In the language of Sir Knight Bruce, vice-chancellor, in *Moore* v. *Darton, 4 De G. & S. 517,* the delivery of this instrument was not the delivery of the mere evidence of the debt, but it was " the delivery of that without which the debt would not have been a specialty." I think, therefore, that when Mrs. Craig directed the cancellation of this mortgage deed and handed it to Mr. Young with intent to make him a gift of it and of the money which it secured, she effectually canceled the debt.

The complainant stands in this position : If Young's evidence on this subject (in the will case) is altogether excluded, then the receipt on the mortgage is *prima facie* evidence of payment, and there is no evidence to the contrary. If the evidence is received, then it appears that the receipt was signed in furtherance of Mrs. Craig's intent to make him a gift of the security. In either alternative, the defendant, as Young's executor, is discharged from liability to account for the money.